UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL GRESHAM,

        Plaintiff,

                              Case No. 2:21-cv-252

v.

                              Hon. Hala Y. Jarbou

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Unknown Part(y)(ies) #1. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's First Amendment claim asserting that he was issued false misconducts, and (2) Plaintiff's Eighth Amendment claim contending that he was denied medical treatment. Plaintiff has the following claims remaining in the case: (1) First Amendment retaliation claims against the URF Defendants—Defendants Horton, Corgan,

Corrigan, Plumm, Wannacot, Landreville, Cory-Spiker, and Botho arguing that they denied him placement in protective custody because of his prior lawsuits; and (2) Eighth Amendment failure to protect claims against Defendants Horton, Corgan, Corrigan, Plumm, Wannacot, Landreville, Cory-Spiker, and Botho asserting that they rejected his requests for protective custody after prison gang members threatened to stab him. The Court will also deny Plaintiff's pending motions.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington. Plaintiff also sues the following URF staff: Warden Connie Horton; Acting Warden J. Corrigan; Deputy Wardens R. Corgan and R. Batho; Resident Unit Manager Teresa Cory-Spiker; Prison Counselors D. Plumm and Unknown Wannacott; and Corrections Officer Nicholas Landreville. Plaintiff further sues Unknown Part(y)(ies) #1 of an unspecified position.

Plaintiff alleges that multiple URF staff called him a "snitch," purportedly in response to a prior lawsuit that Plaintiff filed against MDOC officials at another prison. According to the complaint, Defendants Landreville, Cory-Spiker, Botho—and other unspecified URF staff— "yell[ed] it" on all four wings of the prison unit during November and December 2021. (Compl., ECF No. 1, PageID.4, 5.) Plaintiff argues that when other prisoners heard these Defendants call Plaintiff a snitch, the other prisoners believed that Plaintiff had reported on prisoners. As a result, Plaintiff alleges that three different gangs, "the Bloods, the Vice Lords, [and] the Gangster [D]isciples yelled out [of] their cell doors and stated[, ']Gresham[,] when you go to G[eneral] P[opulation,] we are going to stab you[,] we are also going to "dress you out[.]"'" (*Id.*, PageID.4.)

Plaintiff alleges that several prisoners also threw feces and urine at him in the showers, but the complaint does not offer detail or explain whether the shower incidents have any connection to being labeled as a snitch.

The crux of Plaintiff's complaint maintains that Defendants failed to put him in protective custody after the threats he received from the prison gangs. Plaintiff alleges that he "wrote kites, letters and spoke to" Defendants Washington, Horton, Corgan, Corrigan, Plumm, Wannacot, Landreville, Cory-Spiker, and Botho asking for placement in protective custody but was denied. These Defendants, apart from Defendant Washington, allegedly explained to Plaintiff that he would not receive protection because he filed lawsuits against their co-workers.

Defendant Landreville also issued Plaintiff "false" misconduct tickets purportedly on orders from Defendants Horton, Corgan, Corrigan, Plumm, Wannacot, Cory-Spiker, and Batho. According to the complaint, these misconduct tickets reported that Plaintiff refused to go to general population. Although Defendant Landreville allegedly reported that the other URF Defendants ordered him to issue the misconducts, Plaintiff asserts that all the URF Defendants stated that they ordered Landreville to do so "because [Plaintiff] was trying to change the system for the better . . . ." (*Id.*, PageID.6.) Plaintiff explains that he sought "reforms through his Gresham[']s 2nd Theory HA=HR$^{10}$." (*Id.*)

Plaintiff seeks injunctive relief and $100 million in damages.[1]

**II.    Pending Motions**

Plaintiff has filed a motion to appoint counsel and for a preliminary injunction.

---

[1] The Court concurs with the Magistrate Judge who previously observed that "Plaintiff's allegations . . . strain credulity." (ECF No. 6, PageID.69.) Despite some misgivings, the Court does not conclude that the allegations are clearly irrational or wholly incredible. Consequently, at this early juncture, the Court will accept the allegations as true. *See Denton*, 504 U.S. at 33.

3

### A. Appointment of Counsel

Plaintiff has filed a motion for the appointment of counsel. (ECF No. 2.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 2) therefore will be denied.

### B. Motion for a Preliminary Injunction

In the same motion, Plaintiff also requests a preliminary injunction seeking transfer to a different facility. (ECF No. 2.) Since filing his complaint and his motion, Plaintiff has been transferred to a different facility. Insofar as the motion seeks a preliminary injunction, it appears moot. Therefore, the Court will deny the motion.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges claims arising under the First and Eighth Amendments.

### A. Lack of Allegations

Plaintiff names Defendant Unknown Part(y)(ies) #1, identified as "John Does" and "Jane Does" in the caption of the complaint, but the body of the complaint lacks any allegations involving the Defendant(s).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention any "John Does" or "Jane Does" in the body of his complaint. His allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8

(requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, the Court will dismiss the complaint against Defendant Unknown Part(y)(ies) #1.

**B.    First Amendment**

Plaintiff alleges that Defendants Horton, Corgan, Corrigan, Plumm, Wannacott, Cory-Spiker, Batho, and Landreville (the URF Defendants) retaliated against him based on two distinct claims. In the first claim, all URF Defendants purportedly denied him protective custody because he previously had sued their coworkers. In the second claim, Defendants Horton, Corgan, Corrigan, Plumm, Wannacott, Cory-Spiker, and Batho allegedly ordered Defendant Landreville to issue Plaintiff false misconduct tickets because Plaintiff "was trying to change the system . . . ." (Compl., ECF No. 1, PageID.6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In his first claim, Plaintiff alleges that "he would not get protection" from the prison gangs who purportedly thought he was a snitch "because he had filed lawsuits against [their] co-workers . . . ." (Compl., ECF No. 1, PageID.5.) Taking Plaintiff's allegations as true as the Court must at this early juncture, the Court concludes these allegations sufficiently support his first retaliation claim.

7

Meanwhile, Plaintiff's second retaliation claim fails at the first element. In Plaintiff's second claim, he alleges merely that he "was trying to change the system" and that he sought "reforms through his Gresham[']s 2nd Theory HA=HR[10]."[2] (*Id.*, PageID.6.) Plaintiff explains neither the way he sought reform nor the reforms he specifically sought. Although the allegations could be consistent with protected conduct, the complaint does not include any facts that would permit the Court to reasonably infer protected conduct and, thus, simply fails to allege "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. Accordingly, the Court will dismiss Plaintiff's retaliation claim alleging that the URF Defendants ordered or issued false misconducts because Plaintiff sought to reform the system.

### C. Eighth Amendment

Plaintiff's asserts two Eighth Amendment claims. His first claim contends that Defendant Washington and the URF Defendants denied Plaintiff placement in protective custody after prison gang members purportedly threatened him. His second claim argues that unspecified "Defendants" denied Plaintiff medical treatment after prisoners allegedly threw urine and feces at him in the shower.

---

[2] Plaintiff additionally appears to allege that he was issued false misconduct tickets also because he filed lawsuits. Plaintiff alleges only that he "engaged in protected conduct [by] filing lawsuits" (Compl., ECF No. 1, PageID.6), but he does not explain any link between the lawsuits and the issuance of false misconduct tickets. Consequently, to the extent that Plaintiff alleges that URF Defendants ordered or issued purported false misconduct tickets because he filed lawsuits, his allegations are conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### 1. Failure to protect

Plaintiff's first Eighth Amendment claim contends that URF personnel called Plaintiff a "snitch," and Defendants then declined to place him in protective custody when prison gang members threatened him.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying

9

deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff alleges facts that, if true, support the objective prong of the test. According to the complaint, one or more prison gang members threatened to stab Plaintiff when he returned to general population.

Yet, the allegations that support the subjective prong do not apply equally to all Defendants. Plaintiff asserts that he wrote kites and letters or spoke to Defendant Washington and the URF Defendants "requesting protective custody." (Compl., ECF No. 1, PageID.5.) Presumably, Plaintiff explained in those kites, letters, and conversations that he believed he needed protective custody because of the threats from prison gang members. Even accepting the complaint's dubious allegations as true, Plaintiff states only that each of the URF Defendants cited his previous lawsuit to explain why they denied Plaintiff's requests for protection. Plaintiff therefore alleges facts stating an Eighth Amendment claim against those Defendants.

On the other hand, the allegations do not lead to a reasonable inference that Defendant Washington knew of and disregarded a risk to Plaintiff. Defendant Washington is the director for the entire MDOC. Even if Plaintiff could demonstrate that Defendant Washington received or read a kite or letter that he sent to her, "[s]uch brief exposure to [Plaintiff's] alleged plight is not 'enough personal contact with [him] to be subjectively aware' of any risk" that prison gangs may have "posed to his safety." *See Reedy v. West*, 988 F.3d 907, 914 (6th Cir. 2021) (quoting *Bishop v. Hackel*, 636 F.3d 757, 768–71 (6th Cir. 2011)) (holding that the plaintiff's two brief one-minute conversations with the defendant discussing threats made against the plaintiff did not create enough personal contact to satisfy the subjective prong). Because Plaintiff fails to allege facts sufficient to state an Eighth Amendment claim against Defendant Washington for the failure to protect him, the Court will dismiss the claim against her.

### 2. Failure to provide medical care

Plaintiff's final claim asserts that "Defendants . . . denied him treatment" after Plaintiff was purportedly exposed to urine and feces. The allegations do not provide any specificity as to which Defendant or Defendants were involved and to what extent. The Sixth Circuit has held that, for example, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff here has failed to allege with sufficient particularity the facts to demonstrate what each Defendant did, and the allegations

therefore fail to support a reasonable inference that each Defendant is liable. *See Boxill*, 935 F.3d at 518. Accordingly, the Court will dismiss the claim.

## Conclusion

The Court will deny Plaintiff's pending motions. Further, having conducted the review required by the PLRA, the Court determines that Defendants Washington and Unknown Part(y)(ies) #1 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's First Amendment claim asserting that he was issued false misconducts, and (2) Plaintiff's Eighth Amendment claim contending that he was denied medical treatment. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against the URF Defendants—Defendants Horton, Corgan, Corrigan, Plumm, Wannacot, Landreville, Cory-Spiker, and Botho arguing that they denied him placement in protective custody because of his prior lawsuits; and (2) Plaintiff's Eighth Amendment failure to protect claims against Defendants Horton, Corgan, Corrigan, Plumm, Wannacot, Landreville, Cory-Spiker, and Botho asserting that they rejected his requests for protective custody after prison gang members threated to stab him.

An order consistent with this opinion will be entered.

Dated: June 28, 2022 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE