UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GRESHAM, #272603,

        Plaintiff,

v.

CONNIE HORTON, et al.,

        Defendants.
_____/

Case No. 2:21-cv-252

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R. & R.) addresses the motion for summary judgment filed by Defendants Horton,[1] Corrigan, Plumm, Wonnacott,[2] Landreville, Corey-Spiker,[3] and Batho based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 22.) It also addresses Plaintiff's failure to serve Defendant R. Corgan.

Plaintiff — state prisoner Michael Gresham — filed suit pursuant to 42 U.S.C. § 1983 on December 27, 2021. In his complaint, Gresham alleged that while he was incarcerated at Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF employees violated his First and Eighth Amendment rights by retaliating against

---

[1]    Named as "Horrton" in Gresham's complaint. (ECF No. 1, PageID.2.)
[2]    Named as "Wannacot" in Gresham's complaint. (*Id.*, PageID.3.)
[3]    Named as "Cory-Spiker" in Gresham's complaint. (*Id.*)

him, failing to protect him, and acting with deliberate indifference to his serious medical needs. (ECF No. 1, PageID.4-6.)

More specifically, Gresham alleged that URF employees retaliated against him for past lawsuits by refusing to place him in protective custody after he was threatened by various prison gangs. (*Id.*, PageID.4-5.) Gresham further alleged that URF employees issued him false misconduct tickets in response to his attempts to "change the system." (*Id.*, PageID.6.) Finally, Gresham alleged that URF employees denied him medical treatment after other inmates threw urine and feces at him in the shower. (*Id.*, PageID.4-5.) At this stage of the case, only Gresham's First and Eighth Amendment claims against Defendants Horton, Corgan, Corrigan, Plumm, Wonnacott, Landreville, Corey-Spiker, and Batho for denying him placement in protective custody in retaliation for his past lawsuits remain. (*See* ECF No. 9, PageID.92 (Screening Op.).)

Defendants Horton, Corrigan, Plumm, Wonnacott, Landreville, Corey-Spiker, and Batho now move for summary judgment, asserting that Gresham did not properly exhaust his administrative remedies. (ECF No. 22.) Defendants argue that Gresham filed only one grievance at URF, and that he did not receive a Step III response to that grievance until *after* he filed his complaint. (ECF No. 23, PageID.144.) In response, Gresham says that URF staff "misled" him as to the grievance process, and that they "issued threats and intimidation" rendering the grievance process unavailable to him. (ECF No. 24, PageID.168.)

The undersigned respectfully recommends that the Court grant the motion for summary judgment filed by Defendants Horton, Corrigan, Plumm, Wonnacott, Landreville, Corey-Spiker, and Batho (ECF No. 22) and dismiss Gresham's claims against them. The record before the Court reflects that Gresham successfully exhausted the grievance process *after* he filed this lawsuit. As such, there are no genuine issues of material fact; the grievance process was available to Gresham, and Gresham did not exhaust prior to filing suit in federal court. In the undersigned's opinion, that ends the Court's inquiry.

Additionally, the record reflects that the U.S. Marshals Service was unable to identify and therefore unable to serve the person identified in the complaint as R. Corgan. The time for service has now expired. The undersigned therefore recommends that the Court order Gresham to show cause as to why his claims against Corgan should not be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 4(m).

## II.     Relevant Factual Allegations

Gresham says that while he was housed in administrative segregation at URF in November and December of 2021, Defendants began calling him a snitch for lawsuits that he filed against their fellow staff members. Because Defendants called Gresham a snitch in front of other prisoners, prison gangs including "the Bloods, the Vice Lords, [and] the Gangster Disciples" began threatening Gresham through their cell doors. (ECF No. 1, PageID.4.) Specifically, Gresham alleges that the gang members threatened to stab him and "dress [him] out in the shower" when Gresham

3

returned to general population. According to Gresham, one of those gang members had previously attacked Gresham while they were incarcerated at another Michigan Department of Corrections facility in 2019. (*Id.*)

Based on these threats, Gresham says that he asked Defendants former Warden Connie Horton, Deputy Warden (DW) R. Corgan, Warden James Corrigan, Prison Counselor (PC) Dustin Plumm, PC Ricky Wonnacott, Corrections Officer (CO) Nicholas Landreville, Resident Unit Manager (RUM) Teresa Corey-Spiker, and Assistant Deputy Warden (ADW) Robert Batho to place him in protective custody. (*Id.*, PageID.4-5.) Gresham alleges that Defendants denied his request based on Gresham's history of filing lawsuits[4] against their friends and co-workers. (*Id.*, PageID.5.) Gresham says that URF inmates later assaulted him by throwing their bodily fluids at him during shower time.

### III.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[5] or whether it is so one-sided that one

---

[4]    Gresham specifically identifies *Gresham v. Austin, et al.*, W.D. Mich. Case No. 2:16-cv-71. (ECF No. 1, PageID.4-5.)
[5]    If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

4

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV. **Exhaustion**

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly,

---

Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

6

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance process for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W. The Policy Directive also provides the following directions for completing grievance forms:

7

"The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id*. at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id*. at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id*. at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id*. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id*. at ¶ II.

When the grievance process is not available because the issue presented is non-grievable, exhausting the grievance process is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative

remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

9

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[6]

## V.     Exhaustion Analysis

In arguing that they are entitled to summary judgment based on Gresham's failure to exhaust his administrative remedies, Defendants point to Gresham's Step III Grievance Report. (ECF No. 23, PageID.144 (citing ECF No. 23-3).) Gresham's Step III Grievance Report reflects all of the grievances that Gresham filed and appealed through Step III of the grievance process from January 1, 2016, to July 7, 2022. (ECF No. 23-3.) That pertinent portion of Gresham's Step III Grievance Report is shown below:

| Step III Rec'd | Grievance Identifier | Grievance Category | Facility | Step I Received Date | Resolved | Partially Resolved | Denied | Rejected | Closed | Date Mailed |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2022 | RMI-21-12-1675-19C | 19C | 19 | 12/7/2021 | ☐ | ☐ | ☑ | ☐ | ☑ | 3/16/2022 |
| 12/27/2021 | URF-21-11-2783-03B | 03B | 8 | 11/19/2021 | ☐ | ☐ | ☑ | ☐ | ☑ | 2/2/2022 |
| 11/15/2021 | RMI-21-08-1091-15F | 15F | 19 | 8/2/2021 | ☐ | ☐ | ☑ | ☐ | ☑ | 1/4/2022 |

MDOC Prisoner Step III Grievance Report, 1/1/2016 to Present. Prisoner #: 272603, Last Name: Gresham, First Name: Mike.

(*Id.*, PageID.160.)

---

[6]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

10

Gresham's Step III Grievance Report contains but one grievance appealed through Step III of the grievance process at URF: grievance URF-21-11-2783-03B. (*Id.*, PageID.160.) As the only grievance appealed through Step III of the grievance process at URF, grievance URF-21-11-2783-03B is the only grievance that could have exhausted Gresham's present claims prior to this lawsuit. But, regardless of its contents,[7] Defendants say that it did not; as shown above, the Step III appeal to grievance URF-21-11-2783-03B was not received until December 27, 2021 — the same day that this Court received Gresham's complaint. And the Step III response was not mailed to Gresham until February 2, 2022.

The grievance procedure outlined in P.D. 03.02.130 is not completed for exhaustion purposes until the prisoner receives the Step III response. *Ross v. Duby*, No. 1:09-CV-531, 2010 WL 3732234 (W.D. Mich. Sept. 17, 2010) (determining that the plaintiff had not exhausted his claim because the response to his Step III grievance was issued after the complaint was filed). "The plain language of the [PLRA] makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citing *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). "The prisoner, therefore, may not exhaust administrative remedies during

---

[7] Defendants do not provide the grievance or appeal forms associated with grievance URF-21-11-2783-03B. Nor does Gresham. Because it is Defendants burden to establish that there are no genuine issues of material fact, and that Gresham failed to exhaust his administrative remedies, the undersigned assumes for the purpose of this R. & R. that grievance URF-21-11-2783-03B focused on Gresham's request for protective custody, and Defendants retaliatory denial of those requests.

11

the pendency of the federal suit." *Id.* (citing *Larkins v. Wilkinson*, No. 97-4183, 1998 WL 898870, at *2 (6th Cir. Dec. 17, 1998)). Accordingly, Defendants have established, via Gresham's Step III Grievance Report, that Gresham failed to exhaust his administrative remedies in accordance with the PLRA.

The undersigned acknowledges that in response to Defendants' motion, Gresham asserts that he was thwarted from utilizing the grievance process, and that the grievance process was therefore unavailable to him.⁸ (ECF No. 24, PageID.168.) But allegations of thwarting do not come into play when a prisoner successfully exhausts his administrative remedies. Instead, the Court considers "machination, misrepresentation, or intimidation" by prison administrators "[w]hen a prisoner makes affirmative efforts to comply [with the administrative remedies] *but does not succeed.*" *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022) (emphasis added) (first quoting *Ross*, 578 U.S. at 643; and then quoting *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)). That is because the only circumstances under which the PLRA does not mandate a prisoner's exhaustion of administrative remedies prior to filing suit are when there are no administrative remedies available. *See Ross*, 578 U.S. at 642-44.

---

⁸ Specifically, in a verified declaration attached to his response brief, Gresham attests that Defendants told him that his grievances for protective custody would be denied all the way through Step III of the grievance process. (ECF No. 24-1, PageID.183.) Gresham further attests that Defendants told him that if he continued to pursue the grievance process, they would make sure he was assaulted by his fellow inmates. (*Id.*) And Gresham attests that when he went to submit his Step III appeal for grievance URF-21-11-2783-03B, PC Plumm took the grievance, told Gresham it would be denied, and then told Gresham that he was not even going to submit it. Plumm then allegedly crumpled up the grievance, and threatened Gresham with bodily harm. (*Id.*)

When administrative remedies are available to a prisoner, "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* at 638.

In the undersigned's opinion, Defendants have demonstrated that the grievance process was available to Gresham, and that he filed suit before exhausting the grievance process. As such, the PLRA mandates that the Court dismiss Gresham's claims against Defendants Horton, Corrigan, Plumm, Wonnacott, Landreville, Corey-Spiker, and Batho without prejudice.

## VI. Failure to Serve

Although the undersigned recommends the dismissal of Gresham's claims against the majority of the defendants, there is one remaining defendant who did not join in the motion for summary judgment: Defendant R. Corgan. A review of docket sheet reveals a report regarding service from the U.S. Marshals Service.[9] (ECF No. 19.) That report reflects that the U.S. Marshals Service attempted to serve Corgan in accordance with this Court's May 17, 2023, order for service, (ECF No. 16), but that it was unable to identify the defendant, (ECF No. 19, PageID.126).[10]

Federal Rule of Civil Procedure 4(m) sets forth a 90-day deadline for service. If a defendant is not served within that time period, "the court—on motion or on its

---

[9] The Court ordered service by the U.S. Marshals Service, (ECF No. 16, PageID.116), after granting Gresham leave to proceed *in forma pauperis* in this matter, (ECF No. 6, PageID.73).

[10] It further reveals the MDOC's belief that Gresham intended to name Warden James Corrigan, who had already executed a waiver of service in this matter, instead of "R. Corgan." (ECF No. 19, PageID.126.)

own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

The 90-day period for service in this case began May 17, 2023. (ECF No. 16, PageID.114.) The time for service has therefore expired. Though the burden of effectuating service shifted to the Court and its officers once the Court granted Gresham leave to proceed *in forma pauperis*, Gresham was still responsible for taking reasonable steps to identify and locate the named defendants. *See VanDiver v. Martin*, 304 F. Supp. 2d 934, 940 (E.D. Mich. 2004) ("[A] plaintiff may not remain silent and do nothing to effectuate service. At minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." (quoting *Rochon v. Dawson*, 828 F.2d 1107, 1109 (5th Cir. 1987))). It appears that Gresham has failed to take reasonable steps to identify Defendant Corgan.[11] Accordingly, the undersigned recommends that the Court order Gresham to show cause as to why his claims against R. Corgan should not be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 4(m).

---

[11] However, the undersigned notes that there are no indications on the record that Gresham was expressly notified of the U.S. Marshals Service's inability to serve R. Corgan. It does not appear that Gresham was mailed a copy of the report regarding service, or that Gresham asked for a copy of the docket sheet, which would have alerted him to the issue, after the U.S. Marshals Service filed its report.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant the motion for summary judgment filed by Defendants Horton, Corrigan, Plumm, Wonnacott, Landreville, Corey-Spiker, and Batho (ECF No. 22) and dismiss Gresham's claims against them. The record before the Court reflects that Gresham successfully exhausted the grievance process after he filed this lawsuit. As such, there are no genuine issues of material fact; the grievance process was available to Gresham, and Gresham did not exhaust prior to filing suit in federal court. In the undersigned's opinion, that ends the Court's inquiry.

Additionally, the record reflects that the U.S. Marshals Service was unable to identify and therefore unable to serve the person identified in the complaint as R. Corgan. The time for service has now expired. The undersigned therefore recommends that the Court order Gresham to show cause as to why his claims against Corgan should not be dismissed without prejudice in accordance with Federal Rule of Civil Procedure 4(m).

If the Court accepts this recommendation, Gresham's First and Eighth Amendment claims against Defendant R. Corgan for denying Gresham placement in protective custody in retaliation for his past lawsuits will remain.

Dated:  October 17, 2023                                  /s/ *Maarten Vermaat*
                                                           MAARTEN VERMAAT
                                                           U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).